# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| BRUCE G. VAN ORNUM and STEVEN G. SHORE,<br><br>    Plaintiffs,<br><br>vs.<br><br>TRANSAMERICA CAPITAL, INC., AEGON N.V., PAULA NELSON and LARRY NORMAN as individuals,<br><br>    Defendants. | No. 05mc0044<br><br>**ORDER** |

_____

This matter comes before the court pursuant to non-party Patrick Baird's August 5, 2005 motion for protective order (docket number 1). Mr. Baird's deposition was noticed in litigation pending in the District of Minnesota, <u>Van Ornum and Shore v. Transamerica Capital, INC., AEGON, N.V., Paula Nelson and Larry Norman</u>, Case Number 04-2950 (D. Minn.). In that case, the plaintiffs contend that they were fired for complaining of fraud in the marketing of an annuity product. Mr. Baird, the President and Chief Executive Officer of AEGON, has filed the instant motion, seeking a protective order prohibiting the plaintiffs from deposing him.

<u>Fed. R. Civ. P.</u> 26(b)(1) states, in relevant part:
> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . [r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

<u>Fed. R. Civ. P.</u> 26(c) provides, in relevant part:
> Upon motion by a party or by the person from whom discovery is sought . . . and for good cause shown, the court

> in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
> (1) that the disclosure or discovery not be had . . .

Discovery may not be had on matters irrelevant to the subject matter involved in the pending action, and even if relevant, "discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information." Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter #2, 197 F.3d 922, 925 (8th Cir. 1999) (citing Micro Motion, Inc. v. Kane Steel Co., 894 F.2d 1318, 1323 (Fed. Cir. 1990)). "[F]ederal decisions recognize the potential for abuse and generally do not allow a plaintiff's deposition power to automatically reach the pinnacle of the corporate structure." Liberty Mutual Ins. Co. v. Superior Court, 10 Cal.App.4th 1282, 1288 (Cal. App. 1 Dist. 1992). This rule is particularly applicable where there is a reasonable assertion that the corporate executive has no direct knowledge of the facts. See Liberty Mutual Ins., 10 Cal.App.4th at 1288 (citing Salter v. Upjohn Co., 593 F.2d 649, 651 (5th Cir. 1979)). "Depositions of high-level corporate executives may be duplicative, cumulative and burdensome where the person sought to be deposed has no personal knowledge of the events in dispute." Murray v. County of Suffolk, 212 F.R.D. 108 (E.D.N.Y. 2002) (citing Baine v. General Motors Corp., 141 F.R.D. 332, 333-35 (M.D. Ala. 1991)). Accordingly, when a party seeks to depose high-level decisionmakers who are removed from the daily activities of the litigation, the party should first demonstrate that the would-be deponent has unique personal knowledge concerning the matter at issue. See Baine, 141 F.R.D. at 334 (discussing the holding in Community Federal Sav. & Loan Ass'n v. FHLBB, 96 F.R.D. 619, 621-22 (D.D.C. 1983)). The unique personal knowledge of the would-be deponent should be truly unique, meaning that

the information sought could not be gathered, despite reasonable efforts, through less intrusive means such as interrogatories, deposing the corporation, or deposing other persons. Id. (discussing holding in Community Federal Sav. & Loan Ass'n, 96 F.R.D. at 621-22).

In support of his motion for protective order, Mr. Baird asserts that he has no personal knowledge of the facts and circumstances concerning the crux of the plaintiff's claim, that is that the plaintiffs were terminated for notifying their employer of an allegedly illegal rate change in violation of the Sarbanes-0xley Act. Mr. Baird further asserts that requiring him to appear for a deposition in this matter would impose an undue burden on him. Additionally, Mr. Baird argues that the plaintiffs have failed to make any showing that the rate change at issue was in fact illegal.[1] Finally, Mr. Baird points out that Mr. Norman, in his deposition testimony, testified that he made the decision to change the rate in January of 2003.[2] Accordingly, Mr. Baird asserts that the plaintiffs are confusing Mr. Norman's decision to change the rate in January of 2003, which decision the plaintiffs contend was illegal, with the decision made by Mr. Baird, also in January of 2003, to discontinue sales of the GMIB rider, which decision is not at issue in this case.

---

[1] Mr. Baird argues that because the plaintiffs have failed to establish that the rate change was illegal, they are unable to establish the relevance of Mr. Baird's testimony. The court does not consider this argument, as it is irrelevant to the court's analysis.

[2]
Q: The other thing being the- - reducing the rate of return you mean?
A: Mr. Norman): Yes.
Q: I mean, I've got your interrogatory answers here, and it says that you were the decision maker with respect to reducing the rate. Is that true?
A: . . . [a]nd I talked with Ron and asked him, 'What are our options?' And he said, 'We can go to 3 percent,' and I said 'Let's do that.'

The plaintiffs argue that Mr. Baird should be deposed because he has knowledge of facts and circumstances relevant to the plaintiffs' claims in this matter. Specifically, the plaintiffs argue that Mr. Baird was responsible for product decisions for AEGON's subsidiaries during the relevant time period,[3] and one issue in this case concerns the "changes" that Mr. Baird allegedly made to the "TLIC Landmark variable annuity and its GMIB rider."[4] The plaintiffs further contend that Mr. Baird has relevant testimony because he had the right to make final decisions concerning the Landmark variable annuity.[5] Additionally, the plaintiffs assert that Mr. Baird's testimony concerning the

---

[3] The plaintiffs cite to the deposition testimony of Larry Norman, in relevant part, as follows:

> Q: And would [Mr. Baird] have the right to make a final decision about whether the product would be discontinued or continued? Did he have the right to give you a directive to say, "Take this product out of the marketplace?"
>
> . . .
>
> A: (Mr. Norman): [Mr. Baird's] my boss. He is the CEO of AEGON, USA, so he is hence responsible for all the results we have.
>
> Q: Including TCI results?
> A: Yes, eventually.
> Q: So the answer to my question is, yes, if he tells you to discontinue the GMIB rider and that's a directive, that you are responsible to follow his directives and do that, correct?
>
> . . .
>
> A: Yes.

[4] The GMIB rider was an upgrade option for the Landmark variable annuity.

[5] The plaintiffs again cite to the deposition testimony of Mr. Norman, as set forth in Footnote 2. The plaintiff's further cite to another portion of Mr. Norman's deposition testimony (Norman Deposition pp. 106-110). When read in context, this portion of Mr. Norman's deposition testimony appears to concern Mr. Baird's interest in the company beginning to move forward in generating a new product altogether. The

(continued…)

"connection between AEGON N.V. and the decision to change the [GMIB rider product] is particularly relevant because it goes to the tie between AEGON N.V. and the illegal activity which [the plaintiffs] reported." The plaintiffs conclude that Mr Baird "is a fact witness to a central issue in this case: when the product changes were made, who made them, and whether such changes were legal." His testimony, the plaintiffs argue, is "relevant to prove or disprove the existence of [the alleged] underlying illegality."

The court finds that requiring Mr. Baird's attendance for deposition in this matter would subject him to an undue burden. The record before the court does not indicate that Mr. Baird has unique knowledge of facts or circumstances relevant to the plaintiffs' claims, or to the defendants' defenses, in this case. See Salter, 593 F.2d at 651; Baine, 141 F.R.D. at 334. None of the deposition testimony cited by the plaintiffs support the contention that Mr. Baird was involved in or had knowledge of the decision to reduce the rate, which is the decision that the plaintiffs have contended was illegal. Rather, the only cited deposition testimony directly concerning that issue clearly establishes that Mr. Norman made the decision to reduce the rate. Moreover, the plaintiffs have not demonstrated that they have attempted to elicit the information sought through less intrusive means, such as by way of interrogatories or by deposing other persons more likely to have knowledge concerning the allegedly illegal rate change.[6] Accordingly, Mr. Baird's motion for protective order is granted.

---

[5](…continued)
testimony does not, as asserted by the plaintiffs, clearly indicate that Mr. Baird's "putting a lot of heat" on Ron Ziegler concerned changing the rate at issue.

[6] The court here again notes that Mr. Norman's deposition testimony clearly indicates that it was he who made the decision to change the rate at issue in this case. In light of that deposition testimony, the court is not persuaded by the plaintiffs' assertion that Mr. Baird "is the only person with specific knowledge of a central fact in this case: when the decision was made to lower the GMIB rider rate and who made the decision." Rather, it appears that any testimony that could be given by Mr. Baird on that subject would be merely cumulative.

Upon the foregoing,

IT IS ORDERED that non-party Mr. Baird's motion for protective order (docket number 1) is granted.

September 23, 2005.

_____
JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT